UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GREGORY AYERS,                                          **REPORT AND**
                                                        **RECOMMENDATION**
                              Plaintiff,
                                                        08-CV-0069(A)(M)
v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              Defendant.
_____

      This case was referred to me by Hon. Richard J. Arcara to hear and report in

accordance with 28 U.S.C. §636(b)(1) [4].[1] Before me are the parties' cross-motions for

judgment on the pleadings pursuant to Fed. R. Civ. P. ("Rule")12(c) [6, 8]. For the following

reasons, I recommend that the Commissioner's motion be DENIED, and that plaintiff's cross

motion be GRANTED in part and DENIED in part.


                              **PROCEDURAL BACKGROUND**

      Pursuant to 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the

Commissioner of Social Security denying his application for disability insurance benefits

("DIB") (T. 67).[2] Plaintiff filed an application for DIB benefits on August 14, 2003 alleging a

disability onset date of February 17, 2003 as a result of carpal tunnel syndrome in both hands (T.

73-74, 79). His application was denied on September 29, 2003 (T. 68). An administrative hearing

---

[1]     Bracketed references are to the CM/ECF docket entries.

[2]     References to "T" are to the certified transcript of the administrative record filed by the
defendant in this action.

was scheduled to commence on June 13, 2006, but Administrative Law Judge Jag Jit Singh adjourned it to permit plaintiff to retain counsel (T. 237-240).  The administrative hearing resumed before ALJ Singh on November 7, 2006, and continued before ALJ William Clark on April 4, 2007 (T. 255-64).  Plaintiff was represented at the hearings by Amanda Jordan, Esq. (T. 255).

On August 10, 2007, ALJ Clark issued a decision denying plaintiff's claim (T. 14-22). ALJ Clark's decision became the final decision of the Commissioner on December 14, 2007, when the Appeals Council denied plaintiff's request for review (T. 6-8).


## THE ADMINISTRATIVE RECORD

**A.    Relevant Medical Evidence**

**1.    Plaintiff's Medical History**

Plaintiff began treating with Dale R. Wheeler, M.D., of the Hand Center of Western New York on November 1, 1995 for complaints of numbness, tingling and burning in his hands (T. 135-137).  Because he had normal electrodiagnostic studies as of April 1995, Dr. Wheeler concluded that he was not a candidate for surgical treatment and recommended conservative treatment (T. 136).  In February 1996, plaintiff received "repeated electrodiagnostic studies which did document carpel tunnel syndrome, being positive on the left side which was a change from previous studies" (T. 133).  Therefore, on September 24, 1996, plaintiff underwent left carpal tunnel release (T. 130).

On November 20, 1996, Dr. Wheeler permitted plaintiff, who was a tool setter at General Motors, to return to light duty work effective December 2, 1996 (T. 122). Although he continued to have complaints of pain in his right hand, testing was negative. Id.

On February 24, 1997, Dr. Thomas B. Cowan, M.D., performed an electrodiagnostic evaluation of plaintiff's right hand, which was "normal" (T. 118). Plaintiff was subsequently diagnosed with "symptoms compatible with carpal tunnel syndrome of both upper extremities" (Id.). On April 15, 1997, plaintiff had "some continuing complaints on the left hand with pain in the palm and still some occasional numbness and tingling" (T. 116). Dr. Wheeler placed him on "no specific restrictions . . . other than continued use of the braces" (T. 116).

On August 18, 1997, plaintiff had "some modest complaints but appears to be able to manage these conservatively presently" (T. 115). Despite plaintiff's continued complaints of hand pain, on September 8, 1997 and October 27, 1997 Dr. Wheeler continued to "recommend conservative care" (T. 114, 112).

On January 15, 1998, Dr. Wheeler noted that "based on WCB guideline for carpal tunnel syndrome . . . [plaintiff's] left hand would be awarded 15% loss use of the hand" (T. 111). Dr. Wheeler indicated that he would continue to treat plaintiff on an as- needed basis. Id. On June 7, 1999, plaintiff was seen by Dr. Wheeler as a result of a fall in which he reinjured his left hand (T. 109). Although Dr. Wheeler found that plaintiff appeared to have sustained a soft tissue injury, he did "not recommend anything beyond conservative therapy for him" and cleared him for "normal work activities". Id.

On April 10, 2000, plaintiff reported that he was experiencing more pain in the right hand (T. 108). He had recently begun taking Celebrex, which "perhaps had helped his

symptoms a bit but overall he does describe soreness in the digits wore with his gripping activities." Id. However, plaintiff's exam "reveal[ed] negative evaluation for nerve irritation." Id. Therefore, Dr. Wheeler continued to recommend "a conservative approach for him . . . . If he has ongoing complaints I would suggest his primary care physician refer him to a rheumatologist for further evaluation." Id.

On October 5, 2001, Dr. Raymond Schultz, M.D. performed carpal tunnel release surgery on plaintiff's right hand (T.158). Following the operation, plaintiff had continued complaints of pain in both of his hands. However, a September 2002 electrodiagnostic evaluation showed "mild residual carpal tunnel on the left but no evidence of carpal tunnel on the right" (T. 148). Because Dr. Schultz believed that he would have permanent pain in his hands, which would contribute to his ability to perform his job, he requested a functional capacity evaluation. Id. The functional capacity evaluation revealed that plaintiff had "a decreased tolerance to heavy repetitive activity within his hand. He had grip strength at 10th percentile for his age. 3 point pinch was at the 10th percentile for his age, and lateral pinch at the 25th percentile for his age. His BTE work simulator testing revealed him at below the 25th percentile with grip endurance of the right hand limited to the 20th percentile." Id. Dr. Schultz concluded that "it appears [plaintiff] has reached the maximum medical improvement from his right carpal tunnel release. . . . I would rate him at a 20% permanent impairment of this hand. This is a permanent impairment and I would expect no further improvement at this time. In terms of overall work status, I believe that he should be restricted from any jobs that require heavy lifting and endurance. He should be restricted from repetitive activities as well." Id. On February 17, 2003, General Motors placed plaintiff on sick leave (T. 230-31).

On March 3, 2003, Dr. Sung Duk Choi, M.D., examined plaintiff for a Workers' Compensation Loss of Use Evaluation for right forearm and wrist (T. 162-163). Dr. Choi noted the following:

> "Tinel and Phalen's findings in the carpal canal are negative. The fingertips do not show sensory deficit in the five digits of the left and right hand. He has full extension and flexion of the wrist joint. He is able to make full grasp, with full range of motion of the finger joints as well. Strength of the right hand on dynamometer shows 45 lbs. of pull and the left hand shows 40 lbs. of pull" (T. 163).

Dr. Choi concluded that pursuant to the Workers' Compensation Guidelines, plaintiff's condition was permanent and equal to a schedule loss of use of 10% in the right hand. Id.

On October 5, 2004, Winford A. Quick, M.D., a physician with General Motors, found that plaintiff was unable to return to gainful employment (T. 233).

On June 17, 2006, Dr. Richard Pretorius M.D., treated plaintiff for "dizziness/lightheadness, ear pressure and cough, [and] bringing up yellow sputum from mouth" and also diagnosed plaintiff with asthma (T. 194). There was no mention of hand pain. On September 29, 2006 and October 25, 2006, plaintiff complained to Dr. Pretorius about hand pain (T. 198-201).

Dr. Pretorius completed a Physical Capabilities Evaluation on October 26, 2006 (T. 191). He estimated that plaintiff had the maximum capacity to sit for no more than 2 hours at a time and to stand and walk for no more than 1 hour at a time. Id. During an entire 8-hour day, Dr. Pretorius estimated that plaintiff could sit a maximum of 6 hours and stand and walk a maximum of 2 hours. Id. Dr. Pretorius also found that plaintiff had the capacity to occasionally lift and carry between 11 and 20 lbs. Id. He also opined that plaintiff was able to use his hands

for repetitive action such as simple grasping, but that he could not use his hands for pushing and pulling or fine manipulation. Id.  Dr. Pretorius concluded that plaintiff experiences exacerbations of his pain symptoms that make it impossible for him to function in a work setting and was disabled from full-time competitive employment on a sustained basis.  Id.  Dr. Pretorius concluded that at most, plaintiff had the capacity to work a maximum of two hours per day. Id.

Plaintiff was seen by Dana Drummond, M.D. on March 27, 2007 (T. 211-213). However, Dr. Drummond's notes are impossible to decipher.

### 2.    Consultative Examinations

On September 19, 2003,  Dr. Steven Dina, M.D. performed an internal medicine evaluation (T. 168-171).   He noted that plaintiff's hand and finger dexterity was intact; grip strength was 5/5 bilaterally and a variety of other fine motor activities of the hands all appeared normal (T. 170). Dr. Dina diagnosed plaintiff with hypertension, hand pain and decreased supination in elbows. Id.  He found no functional limitation from plaintiff's hypertension or bilateral carpal tunnel syndrome.  Id.  However, he did find that plaintiff's elbow dysfunction created a mild limitation, requiring him to avoid activities that involve repetitive twisting motions involving both arms" (T. 170-171).

On September 25, 2003, a Physical Residual Functional Capacity Assessment was performed by R. Smith, a state medical agency consultant (T. 173-178).  Plaintiff was found to be "limited in the upper extremities" (T. 174).  It was recommended that plaintiff "avoid frequent use of fine manipulation on repetitive basis, and mild decrease in supination at elbow

level - should avoid repetitive twisting, for both findings limits to no greater than 2/3 of work day" (T. 175).

On December 29, 2006, Dr. Kathleen Kelley, M.D., performed an orthopedic examination (T. 202). Plaintiff's tests revealed that his hand and finger dexterity were intact and had bilateral grip strength of 5/5 (T. 204). Dr. Kelley "ask[ed] him to even tie his shoes, which was fine." Id. Dr. Kelley diagnosed plaintiff with "persistent occasional numbness and electric shocks through [his] fingers with specific numbness in ulnar distribution bilaterally . . . Diabetes, well controlled . . . Hypertension, controlled . . . [and] Questionable asthma." Id. She concluded that plaintiff was "minimally limited from repetitive motions of using his hands due to a history of carpal tunnel and also question of ulnar radiculopathy. Suggest work up for same and could be reevaluated after evaluation for same." Id.

## B. Administrative Hearing Conducted on November 7, 2006

### 1. Plaintiff's Testimony

Plaintiff, who was 48 at the time of the hearing, testified that his carpal tunnel surgeries exacerbated his pain (T. 246). He specifically described his pain to have increased from "maybe a 4" to anywhere "from 5 to 10" following the surgery. Id. He described his pain as sharp and constant "like needle pains" on one side of the hand and throbbing and numb around the "pinky finger" (T. 246).

Plaintiff testified his hand pain makes him unable to drive, hold a telephone for extended periods of time, write legibly, and type (T. 247, 249). Without a hand brace, he was

also unable to sleep. Id. For pain, plaintiff took ibuprofen three times daily and was applying a pain patch (T. 248). However, this did not eliminate the pain. Id. He also testified to taking medication for diabetes, high blood pressure, and cholesterol. Id.

Plaintiff testified that he was able to sit eight hours per day, but was unable to write or type (T. 248-249). ALJ Singh decided that a consultative examination was necessary (T. 259).

**C.    Administrative Hearing Conducted on April 4, 2007**

Following plaintiff's consultative examination by Dr. Kelley,  the administrative hearing resumed before ALJ Clark.  This second  hearing centered primarily around the relevance of plaintiff's General Motors employee medical records, which were produced after the hearing.  The only question asked of plaintiff confirmed that his condition had not improved since the earlier administrative hearing.

**D.    ALJ Clark's August 10, 2007 Decision**

ALJ Clark found that plaintiff met the insured status requirements through December 31, 2008 and had not engaged in substantial gainful activity since his alleged onset date of February 17, 2003 (T. 16).  He also found that plaintiff's severe impairments included "post bilateral carpal tunnel release surgery and obesity", but did not have an impairment or combination of impairments that meet or equal the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (T. 17-18).  Plaintiff's non-severe impairments included hypertension, diabetes mellitus and asthma (T. 17).

Crediting the opinions of Drs. Choi, Kelley and Dina, ALJ Clark concluded that plaintiff had the residual functional capacity ("RFC") to "perform light work that does not require claiming ladders, ropes, and scaffolds or frequent twisting of the upper extremities; involves only occasional pushing/pulling of the upper extremities; and does not involve exposure to severe vibrations or to extreme cold or a damp ambient air environment" (T. 18). Although plaintiff was unable to perform his past relevant work, based upon his education, age, work experience and RFC, ALJ Clark found that there were a significant number of jobs in the national economy that plaintiff was able to perform, and therefore concluded that plaintiff was not disabled (T. 21).

## ANALYSIS

**A.     Scope of Judicial Review**

The Social Security Act states that, upon review of the Commissioner's decision by the district court, "the findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. §405(g). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

Under this standard, the scope of judicial review of the Commissioner's decision is limited. This Court may not try the case *de novo,* nor substitute its findings for those of the Commissioner. *See* Townley v. Heckler, 748 F. 2d 109, 112 (2d Cir. 1984). Rather, the Commissioner's decision is only set aside when it is based on legal error or is not supported by substantial evidence in the record as a whole. *See* Balsamo v. Chater, 142 F. 3d 75, 79 (2d Cir.

1998). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the Court's independent analysis of the evidence may differ" from that of the Commissioner. Martin v. Shalala, 1995 WL 222059, *5 (W.D.N.Y. 1995) (Skretny, J.).

However, before deciding whether the Commissioner's determination is supported by substantial evidence, the court must first determine "whether the Commissioner applied the correct legal standard". Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). "Failure to apply the correct legal standards is grounds for reversal." Townley, supra, 748 F. 2d at 112.

## B.    The Disability Standard

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §1382c(a)(3)(B).

The determination of disability entails a five-step sequential evaluation process:

"1.    The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.    If not, the Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities.

-10-

3.      If the claimant has a 'severe impairment,' the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4.      If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.      If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps."

Shaw v. Chater, 221 F. 3d 126, 132 (2d Cir. 2000). *See* 20 C.F.R. §§404.1520, 416.920.

**C.     ALJ Clark Properly Assessed Plaintiff's Credibility**

Plaintiff alleges that ALJ Clark made various errors in assessing his credibility, including failing to properly weigh his subjective complaints of pain, which were consistent with the record as a whole, failing to comply with SSR 96-7p, failing to give plaintiff's "excellent" work history additional credence, and improperly using plaintiff's activities of daily living as the basis for an adverse credibility finding. Plaintiff's Memorandum of Law [8], pp. 12-17. In response, the Commissioner argues that ALJ Clark did afford some credence to plaintiff's subjective complaints of pain, he considered the various factors set forth at 20 C.F.R. 404.1529(c) and SSR 96-7p, and plaintiff's daily activities were properly considered pursuant to

20 C.F.R. 404.1529 and SSR 96-7p.  The Commissioner's Reply Memorandum of Law [9], pp. 8-9.

Concerning plaintiff's credibility, ALJ Clark found:

"The claimant alleges an inability to work due to sharp throbbing pain and numbness in his hands . . . .  After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce a degree of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. Although the undersigned does not doubt that the claimant has some discomfort in his hands, I find that the evidence does not support a conclusion that the pain and numbness would preclude all substantial gainful activity.  Dr. Duk, a treating source, reported essentially normal findings on examination one month after the claimant's alleged onset date.  Dr. Duk also reported that the claimant underwent strength testing of his hands and had 45 pounds of pull in the right hand and 40 pounds of pull in the left hand.  Subsequent examinations by Drs. Dina and Kelley were remarkably normal, evidencing 5/5 grip strength and intact hand and grip dexterity.  Dr. Dina stated that the claimant's ability to grip, grasp, tug, pull, pinch zip, tie, and write, were all within normal limits.  Dr. Kelley noted that the claimant had 5/5 grip strength bilaterally and could even tie his shoes.  In fact, the only limitation imposed by Dr. Dina was that the claimant should avoid activities that involve repetitive twisting motions involving both arms based on the finding of decreased supination of the elbows.  The undersigned has given great weight to this opinion and has accounted for this limitation in the claimant's residual functional capacity.

The undersigned has also accounted for the claimant's pain by limiting him to light work.  I have also limited him to jobs that do not require  climbing, involve only occasional pushing/pulling of the upper extremities and do not involve exposure to severe vibrations; all being activities that might exacerbate the claimant's upper extremity pain. . . .  [T]he undersigned has given the claimant the benefit of the doubt and limited him to light work, taking into account his allegations of pain. The pharmacy printouts . . . do not show regular usage of strong pain medications" (T. 19-20).

ALJ Clark also noted that plaintiff had advised Dr. Dina that he was able to "cook, clean, do laundry, shop, shower, bathe and dress" (T.17).

"Under appropriate circumstances, the subjective experience of pain can support a finding of disability. . . . A claimant who alleges a disability based on the subjective experience of pain need not adduce direct medical evidence confirming the extent of the pain, but the applicable regulations *do require* 'medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain.'" Snell v. Apfel, 177 F.3d 128, 135 (2d. Cir. 1999) (emphasis added).

By plaintiff's own admission, his hand pain only minimally restricted his activities. Plaintiff testified that it prevented him from driving, holding a telephone for a long period of time, from writing legibly, and from typing. (T. 247, 249). Additionally the pain would require him to take long breaks. Id. Nevertheless, I find that ALJ Clark properly discounted plaintiff's subjective complaints of pain in concluding that he could perform light work.

Drs. Dana and Kelley found minimal limiting effects in plaintiff's hands. According to Dr. Kelley, plaintiff's tests revealed that his hand and finger dexterity was intact and grip strength 5/5 bilaterally (T. 204). Dr. Kelley "ask[ed] him to even tie his shoes, which was fine." Id. She concluded that plaintiff was "*minimally limited* from repetitive motions of using his hands due to a history of carpal tunnel and also question of ulnar radiculopathy." Id. Likewise, Dr. Dina found that plaintiff's hand and finger dexterity was intact; grip strength was 5/5 bilaterally and a variety of other fine motor activities of the hands all appeared normal (T. 170). He found no functional limitation from plaintiff's bilateral carpal tunnel syndrome. Id.

The only limitation he recognized was repetitive twisting motions involving both arms due to plaintiff's elbow dysfunction, which he characterized as a "mild limitation" (T. 170-171).

As highlighted by ALJ Clark, plaintiff's employment at General Motors ended when he had exhausted his contractual 120 days of light work, and no other light work was available, rather than as a result of his inability to perform *any* work (T. 20). Thus, there was ample evidence to support ALJ Clark's finding that despite plaintiff's self-described limitations, he could perform light work.

"In assessing the claimant's credibility, the ALJ must consider *all* evidence in the record and give specific reasons for the weight afforded to the claimant's testimony". Matejka v. Barnhart, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005) (Siragusa, J.) (emphasis added). The regulations also require the ALJ to consider:

> "(1) The individual's daily activities; (2) The location, duration, frequency and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measure other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." Matejka, supra, 386 F. Supp. 2d at 205-206. *See* 20 C.F.R. §404.1529(c)(4).

The Social Security Administration's regulations also provide that the fact-finder "will consider all of the evidence presented, including information about your prior work record." 20 C.F.R. §416.929(c)(3).

ALJ Clark discussed a number of these factors in sufficient detail in making his credibility analysis, including the clinical findings of Drs. Dana and Kelley, the prescribed pain

medications, aggravating factors, the location and intensity of plaintiff's pain, and plaintiff's activities of daily living.

Plaintiff argues that his approximately 25 years employment with General Motors entitles him to substantial credibility, plaintiff's Memorandum of Law [8-2], pp. 14-16. However, "'[w]ork history [ ] is but one of many factors to be utilized by the ALJ in determining credibility.'" . . . Although a plaintiff with a long work history is entitled to 'substantial credibility', the Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period." Ruggireo v. Astrue, 2008 WL 4518905, *11 (N.D.N.Y. 2008).

Despite failing to expressly consider every factor set forth in the regulations, I find that the record supports ALJ Clark's credibility determination, which is set forth in adequate detail. See Delk v. Astrue, 2009 WL 656319, *4 (W.D.N.Y. 2009) (Curtin, J.) ("Although his findings do not explicitly indicate whether he considered each of the factors enumerated in the Regulations as outlined above, the court finds the reasons given by the ALJ sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination that plaintiff's subjective complaints were consistent with an RFC for sedentary work.").

Plaintiff also argues that his "ability to engage in limited activities of daily living ought not be used against him when determining if he is disabled." Plaintiff's Memorandum of Law [8], p. 17. The Second Circuit has held that "'a claimant need not be an invalid to be found disabled' under the Social Security Act. . . . Moreover, '[w]hen a disabled person gamely

chooses to endure pain in order to pursue important goals,' such as attending church and helping his wife on occasion go shopping for their family, 'it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.'" Balsamo v. Chater, 142 F. 3d 75, 81-82 (2d Cir. 1998).

ALJ Clark was required to consider plaintiff's daily activities in making his credibility determination. *See* Matejka, supra, 386 F. Supp. 2d at 205-206. Moreover, there is no indication that ALJ Clark's finding that plaintiff was capable of light work was based solely on his self-described daily activities as opposed the consultative examinations and other medical evidence.

**D.      ALJ Clark Properly Assessed Plaintiff's Obesity**

Plaintiff argues that ALJ Clark failed to conduct an "individualized assessment of the impact of obesity on the [p]laintiff's functioning." Plaintiff's Memorandum of Law [8], p. 18. In response, the Commissioner contends that the ALJ correctly complied with SSR 02-1p. The Commissioner's Reply Memorandum of Law [9], p.7.

"Obesity is not in and of itself a disability." Cruz v. Barnhart, 2006 WL 1228581, *9 (S.D.N.Y.2006) (*citing* SSR 02-1p, 2002 WL 31026506 (2002)). "However, obesity may be considered severe-and thus medically equal to a listed disability-if alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities". Id.

Despite the fact that plaintiff neither alleged that his obesity constituted an impairment in his Social Security application or at the administrative hearing, ALJ Clark found

-16-

that plaintiff's obesity was a severe impairment at step two of the sequential evaluation (T16), but failed to specifically address obesity in his RFC assessment. The only reference in ALJ Clark's decision to plaintiff's obesity is that "treatment notes from Dana Drummond, M.D., report that the claimant, an individual, 5'8' tall, weighed 278 pounds. The undersigned notes that this equates to a body mass index of 42.3. However, none of the medical records suggest any untoward symptoms or impairments from this condition" (T. 17).

"An ALJ's failure to explicitly address a claimant's obesity does not warrant remand. . . . When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions". Cruz, supra, 2006 WL 1228581 at *9. See Presswood v. Astrue, 2008 WL 740364, *5 (N.D. Ind.2008) (Although "the ALJ only 'briefly' noted her obesity when he stated that it was one of two severe impairments, [the plaintiff] has provided no argument to address how her obesity effects her ability to work other than to suggest that it generally exacerbates her impairments.").

Here, it is evident that plaintiff's obesity was factored into ALJ Clark's RFC determination. In finding that plaintiff had the RFC to perform light work, ALJ Clark accorded Drs. Choi's, Dina's and Kelley's assessments substantial weight (T. 19). Despite examining plaintiff, none of these doctors noted any limitations from plaintiff's obesity. Therefore, I conclude that ALJ Clark properly considered plaintiff's obesity in making his RFC determination.

**E.     ALJ Clark Erred By Failing To Contact Dr. Pretorius And By Substituting His Opinion for Medical Expert Opinion**

Plaintiff argues that ALJ Clark should have contacted Dr. Pretorius to clarify his opinion.  "Instead, the ALJ chose to rely upon his own lay opinion as to the impact of the objective findings on the Plaintiff's overall level of functionality."  Plaintiff's Memorandum of Law [8-2], p. 5.

ALJ Clark explained his rejection of  Dr. Pretorius' assessment as follows:

> "[Dr. Pretorius] concludes that the claimant can sit for 6 hours and stand/walk for 2 hours in an 8 hour workday.  In contradiction to this statement, Dr. Pretorius goes on to say that the claimant would have to stop work after 2 hours as he is disabled. Dr. Pretorius goes on to say that the claimant stop work after 2 hours as he is disabled.  Dr. Pretorius also limits the claimant to lifting/carrying 11-20 pounds occasionally and precludes him from using his hands for pushing/pulling or fine manipulation.  He stated that he can occasionally perform the posturals. . . . The undersigned has given this internally contradictory opinion no weight.  There is no evidence of record of any impairment that would affect the claimant's ability to sit, stand or walk. His only impairments are the residuals status post carpal tunnel release surgery and obesity. His limitations from the hand surgery affect only the use of his upper extremities.  His obesity does not affect his ability to sit, stand or walk.  Then after stating that the claimant can work an 8-hour day, Dr. Pretorius states that he would have to stop work after 2 hours.  Also, there are no specific findings offered by the doctor to support his opinion. The undersigned does not find this opinion credible and therefore, gives it no weight" (T. 20).

Generally, the Commissioner must give controlling weight to the opinion of a treating physician controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record, such as the opinions of other medical experts.  *See* 20 C.F.R. §404.1527(d)(2); Halloran v. Barnhart, 362 F. 3d 28, 32 (2d Cir. 2004).  However, "the 'ultimate finding of

whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.' . . . Thus, a treating physician's disability assessment is not determinative. . . . Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence." Stevens v. Commissioner of Social Security Administration, 2008 WL 5057029, *5 (N.D.N.Y. 2008).

"An ALJ is required to recontact a treating physician in order to clarify the physician's opinion, when the opinion 'contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'" Stevens, supra, 2008 WL 5057029 at *5. See Colegrove v. Commissioner of Social Security Administration, 399 F. Supp. 2d 185, 189 (W.D.N.Y. 2005) (Larimer, J.) ("the Second Circuit has made clear, . . . that an ALJ cannot simply discount a treating physician's opinion based on a lack of clinical findings that accompany that opinion. . . . Rather, the ALJ has an affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel").

ALJ Clark was not bound to accept Dr. Pretorius' conclusions as binding, especially when presented with the conflicting opinions of Drs. Dana, Kelley and Choi. However, before rejecting Dr. Pretorius' conclusions as being internally inconsistent, unsupported by the record and lacking specific findings, he was obligated to contact Dr. Pretorius and determine the basis for his findings and explanation for the apparent inconsistency. The regulations make clear that "for treating sources, . . . we make every reasonable effort to

recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us." SSR 96-5P, 1996 WL 374183, *2 (S.S.A.).[3] *See* 20 C.F.R. §§404.1512(e)(1), 416.912(e) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

"Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." Id. at *6. "The Second Circuit has held that an ALJ cannot reject a treating physician's diagnosis of complete disability on the ground that the diagnosis is not supported by clinical findings without first attempting to obtain additional information from the treating physician." Pilch v. Apfel, 2000 WL 565101, *5 (D.Conn. 2000).

Before rejecting Dr. Pretorius' assessment that plaintiff was disabled from full-time employment based, in part, on the fact that his findings were supported by "no specific findings" and "internally contradictory", ALJ Clark had an obligation to contact Dr. Pretorius to explain the basis for his opinions (T. 191). He should have obtained an explanation as to what impairments resulted in these limitations, as well as any laboratory and diagnostic techniques

---

[3]     "Social Security rulings are entitled to deference except when they are plainly erroneous or inconsistent with the Social Security Act. " Genier v. Astrue, 298 Fed. Appx. 105, 108 (2d Cir. 2008) (Summary Order) (quoting Gordon v. Shalala, 55 F. 3d 101, 105 (2d Cir.1995)).

used to make the diagnoses.  This was particularly necessary because there did not appear to be

any evidence in the record of any impairment that affected plaintiff's ability to sit, stand or

walk.[4] "The ALJ correctly noted that Mauer's opinions regarding arthritis, reflex sympathetic

dystrophy and fibromyalgia were unsupported in Mauer's records, and that, consequently, there

did not appear to be any basis for Mauer's conclusions concerning restrictions on Plaintiff's

ability to sit, stand and walk, apart from Plaintiff's subjective complaints of pain.  Nevertheless,

before  rejecting Mauer's opinions, the ALJ should have attempted to expand the record, as

described in 20 C.F.R. 404.1512(e)." Dundas v. Astrue, 2008 WL 4282621, *5 (W.D.N.Y. 2008)

(Siragusa, J.).  *See* West v. Barnhart,  2008 WL 2561991, *3 (W.D.N.Y. 2008) (Telesca, J.)

("The medical records submitted by plaintiff's treating pulmonary specialist, Dr. Fiorica, contain

several inconsistencies.  I find that the ALJ committed error by failing to contact Dr. Fiorica for

clarification of his opinions concerning the severity of the plaintiff's asthma and the extent to

which it would be improved if plaintiff quit smoking."); Hartnett v. Apfel,  21 F. Supp. 2d 217,

221 (E.D.N.Y. 1998) ("if an ALJ perceives inconsistencies in a treating physician's reports, the

ALJ bears an affirmative duty to seek out more information from the treating physician and to

develop the administrative record accordingly.").

        The Commissioner appears to argue that it was incumbent on plaintiff's counsel

to indicate that further evidence was necessary when at the hearing ALJ Clark asked plaintiff's

counsel whether there was any other relevant evidence that was not in the file.  The

---

[4]     Although plaintiff did not rely on his obesity, hypertension, diabetes or asthma in his
Social Security application, an ALJ is required "to investigate the disabling effects of an impairment if the
record contains evidence indicating that such an impairment might exist. This obligation is triggered
without regard to whether the claimant has alleged that particular impairment as a basis for disability."
Rodriguez v. Barnhart,  2006 WL 988201, *4 (S.D.N.Y. 2006).

Commissioner's Reply Memorandum of Law [9], pp. 2-3. However, at that time, plaintiff's attorney did not know how ALJ Clark viewed Dr. Pretorius' assessment. When ALJ Clark determined that the assessment was internally inconsistent and unsupported by specific findings, it was incumbent on him - not plaintiff's counsel - to close that gap. *See* Dudelson v. Barnhart, 2006 WL 156474, *4 (S.D.N.Y. 2006) ("Due to the 'non-adversarial nature' of a disability benefits hearing, the ALJ has an affirmative obligation to investigate and develop the record, as well as to develop the arguments both for and against the granting of benefits."); 20 C.F.R. §404.1512(e)(1) ("*we will* seek additional evidence or clarification from your medical source when the report from your medical source . . . " (emphasis added)).

Relying on 20 C.F.R. §404.1527(c), the Commissioner also argues that ALJ Clark had no obligation to recontact Dr. Pretorius because substantial evidence existed to show that plaintiff was not disabled. The Commissioner's Reply Memorandum of Law [9], p. 3. 20 C.F.R. §404.1527(c) provides in relevant part that:

> "(2) If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have.
>
> (3) If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§404.1512 and 404.1519 through 404.1519h."

"However, the duty to recontact is not contingent upon the adequacy of the record; rather, it depends upon the adequacy of the treating physician's report." Bernard v.

Astrue, 2008 WL 2549036, *5 (W.D.La. 2008).[5]  Faced with an explanation and additional

evidence supporting plaintiff's limitations  as determined by Dr. Pretorius, ALJ Clark may have

been inclined to afford greater, if not controlling weight, to Dr. Pretorius' opinion and

incorporated these limitations into his RFC assessment.  *See* SSR. 96-2p, 1996 WL 374188, at *4

(July 2, 1996) ("in some instances, additional development required by a case-for example, to

obtain more evidence or to clarify reported clinical signs or laboratory findings-may provide the

requisite support for a treating source's medical opinion that at first appeared to be lacking or

may reconcile what at first appeared to be an inconsistency between a treating source's medical

opinion and the other substantial evidence in the case record.").[6]

      "The ALJ cannot arbitrarily substitute his own judgment for competent medical

opinion." <u>McBrayer v. Secretary of Health and Human Services</u>, 712 F. 2d 795, 799 (2d

---

[5]      In <u>Bernard</u>, <u>supra</u>, the court ultimately rejected the plaintiff's argument finding that no prejudice was established:  "'To establish prejudice, a claimant must show that [she] could and would have adduced evidence that might have altered the result.' . . .  Here, Bernard argues that there is no way to know from the record what Dr. Nanda would have said had he been re-contacted. . . .  Yet, something more is required than mere speculation that the additional evidence might have made a difference (e.g., a supporting statement from the doctor)."  2008 WL 2549036 at *5.   I disagree with this aspect of <u>Bernard</u>.

      If "an ALJ fails in her duty to affirmatively develop the record and/or consider all of the relevant evidence, the court can still affirm her decision if this error is deemed to be harmless".  <u>Seltzer v. Commissioner of Social Security</u>, 2007 WL 4561120, *10 (E.D.N.Y. 2007).  However,  without benefit of Dr. Pretorius being contacted, I am unable to conclude whether the error was in fact harmless. *See* <u>id</u>. ("Because ALJ Strauss failed to gather the majority of Dr. Dartique's treatment records, the Court cannot determine what his opinion regarding plaintiff's capacity to work is and whether or not ALJ Strauss correctly afforded his opinion the weight that it deserves under the treating physician rule.").

[6]      Plaintiff also argues that ALJ Clark violated the treating physician rule in rejecting Dr. Pretorius' opinion.  Plaintiff's Memorandum of Law [8-2] pp. 9-12. Because I have concluded that ALJ Clark should have contacted Dr. Pretorius to clarify his assessment, I need not decide whether ALJ Clark violated the treating physician rule.  *See* <u>Batista v. Barnhart</u>, 326 F.Supp.2d 345, 353 (E.D.N.Y.2004) ("The duty to develop the record goes hand in hand with the treating physician rule, which requires the ALJ to give special deference to the opinion of a claimant's treating physician").

Cir.1983). However, ALJ Clark did so when he summarily rejected Dr. Pretorius' assessment that plaintiff's "obesity does not affect his ability to sit, stand or walk" (T.20). Without contacting Dr. Pretorius to determine the basis for his opinion that plaintiff had standing and sitting limitations, this was not a determination that he could make.

Therefore, I recommend that this case be remanded to the Commissioner to contact Dr. Pretorius for clarification of the basis for his assessment.


## CONCLUSION

For these reasons, I recommend that the Commissioner's motion for judgment on the pleadings [6] be DENIED and that plaintiff's motion for judgment on the pleadings [8] be GRANTED in part and DENIED in part. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Repot and Recommendation must be filed with the Clerk of this Court within (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. ("Rule") 72(b) and Local Rule 72.3(a)(3). The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g.*, Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

**SO ORDERED**.

DATED:   August 31, 2009

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge